Melvin L. Felton (SBN 276047)
mfelton@sandersroberts.com
Cindy Kaoud (SBN 322640)
ckaoud@sandersroberts.com
**SANDERS ROBERTS LLP**
1055 West 7th Street, Suite 3200
Los Angeles, CA 90017
Telephone: (213) 426-5000
Facsimile: (213) 234-4581

Attorneys for DEFENDANT
**WAYFAIR, LLC**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| BRANDON ALEXANDER, an Individual;<br><br>               Plaintiff,<br><br>    v.<br><br>WAYFAIR, LLC; WAYFAIR, INC.; NANCY FLORES, an individual; GABRIEL FLORES, an individual; STEVEN NO, an individual; CHRISTOPHER BARTON, an individual; JAMES FUENTES, an individual; and DOES 1 to 100, Inclusive.<br><br>               Defendants. | **CASE NO.  5:23-cv-1766**<br><br>**DEFENDANT WAYFAIR, LLC'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. § § 1441 AND 1446**<br><br>Complaint Filed:   July 25, 2023<br>Trial Date:<br><br>[Riverside County Superior Court Case No. CVRI2303780] |

## NOTICE OF REMOVAL

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF BRANDON ALEXANDER:

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, based on complete diversity jurisdiction, Defendant Wayfair, LLC ("Defendant" or "Wayfair") by and through its counsel SANDERS ROBERTS LLP, hereby removes the above-captioned matter from the Superior Court of California, County of Riverside, to the United States District Court, Central District of California, Eastern Division. In support of this removal, Defendant states the following:

## PROCEDURAL BACKGROUND

1. On or about July 25, 2023, Plaintiff Brandon Alexander ("Plaintiff") filed an action in the Superior Court of California, County of Riverside against Wayfair, Wayfair, Inc. (a non-existent entity), and individual defendants, Nancy Flores ("Ms. Flores"), Gabriel Flores ("Mr. Flores"), Steven Ni, erroneously sued as "Steven No" ("Mr. Ni"), Christopher Barton, erroneously sued as "Christopher Baton" ("Mr. Barton"), and James Fuentes ("Mr. Fuentes") ( "Individual Defendants") (collectively "Defendants"), entitled *Brandon Alexander v. Wayfair, LLC, et al.*, Case No. CVRI2303780 (the "State Action"). On or about August 2, 2023, Plaintiff served his unverified Complaint for Damages ("Complaint") on Wayfair.

2. The Complaint purports to assert eight causes of action in the State Action against Wayfair for (1) Wrongful Termination in Violation of Public Policy; (2) Retaliation in Violation of Public Policy and California Labor Code 1102.5; (3) Negligent Supervision; (4) Violation of Labor Code § 6402, 6404, 6405; (5) Violation of California Labor Code Sections 6310 and 6311-Termination after Complaint of Employee Safety; (6) Intentional Inflictions of Emotional Distress

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

("IIED"); (7) Violation of Business and Professions Code Section 17200, et seq.; and (8) Declaratory Relief. (Declaration of Melvin L. Felton ("Felton Decl."), ¶ 2, Exhibit ("Ex.") 1, Compl., *passim*.) The Complaint further purports to assert three causes of action against the Individual Defendants for IIED, Violation of Business and Professions Code Section 17200, et seq., and Declaratory Relief. (*Id*.)

## <u>TIMELINESS OF REMOVAL AND PROCEDURAL REQUIREMENTS</u>

3.    Defendant has thirty (30) days from the date of service or receipt of a copy of the Complaint to remove a case.  28 U.SC. § 1446(b).  Or "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3).

4.    Wayfair was initially served with Plaintiff's Complaint on August 2, 2023. As of the filing of this removal, Wayfair is informed and believes that the Individual Defendants have not been served. (Felton Decl., ¶ 3.) Wayfair is filing this Notice of Removal within 30 days of service. (*Id*.) This Notice of Removal is therefore timely. (*Id.*, ¶ 4.)

5.    Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders for the State Action in Defendant's possession are contained in **Exhibit 1** to the Declaration of Melvin L. Felton concurrently filed herewith.

6.    If any question arises as to the propriety of the removal of this action, Defendant requests the opportunity to conduct discovery, brief any disputed issues and to present oral argument in favor of its position that this case is properly removable.

7.    Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of Defendant's right to assert defenses including, without limitation,

the defenses of (i) lack of jurisdiction over person, (ii) improper venue and/or *forum non conveniens*, (iii) insufficiency of process, (iv) insufficiency of service of process, (v) improper joinder of claims and/or parties, (vi) failure to state a claim, (vii) failure to join indispensable party(ies), or (viii) any other procedural or substantive defense available under state or federal law.

## THE COURT HAS SUBJECT MATTER JURISDICTION ON THE BASIS OF DIVERSITY JURISDICTION

8.    This is a civil action over which this Court has original jurisdiction under 28 U.S.C. section 1332, and Defendant may remove it from state to federal court pursuant to 28 U.S.C. section 1441(b) in that this action involves citizens of different states and the amount in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000), exclusive of attorney's fees, interest, and costs.

### Diversity Jurisdiction Exists Between Plaintiff and Wayfair

#### Plaintiff is a Citizen of California

9.    For diversity purposes, a person is a "citizen" of the state in which she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). "A person is 'domiciled' in a location where he or she has established a fixed habitation or abode of a particular place, and [intends] to remain there permanently and/or indefinitely." *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). A party's residence is *prima facie* evidence of her domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).

10.   The Complaint alleges that Plaintiff was or is a resident of Riverside County. (Felton Decl., Ex. 1, Compl., ¶ 1.) Further, Plaintiff's last known address on file with Wayfair is located in California. (Declaration of Vinh Ho ("Ho Decl."), ¶ 5.) During his employment with Wayfair, Plaintiff lived, worked, and was physically present in California, thus demonstrating an intent to remain in California by residing and working in the State. (*Id.*; Felton Decl., Ex. 1, Compl., ¶ 1.) Therefore, Plaintiff was at all relevant times a citizen and resident of the State of California.

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

<u>Wayfair Is Not A Citizen of California</u>

11.     Wayfair is now and was at the time of the filing of this action, a citizen of a state other than California within the meaning of 28 U.S.C. section 1332(c)(1).

12.     For diversity purposes, a limited liability company's citizenship is determined based on the citizenship of each member of the company. *See Cosgrove v. 15 Bartolotta*, 150 F.3d 729, 731 (9th Cir. 1998); *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

13.     Wayfair is a limited liability company formed in the State of Delaware. (Ho Decl., ¶ 8, Ex. A and B.)  The sole member of Wayfair LLC is SK Retail, Inc. ("SK Retail"). (*Id.*, ¶ 9.)

14.     As a corporation, SK Retail is deemed to be a citizen of both the state in which it was incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c).

15.     SK Retail is now, and ever since this action commenced has been, incorporated under the laws of the State of Massachusetts.  (Ho Decl., ¶ 9, Ex. C.)

16.     Furthermore, Boston, Massachusetts is the site of SK Retail, Inc.'s corporate headquarters and executive offices, where its high-level officers direct, control, and coordinate its activities. (*Id.*, ¶ 10.) Many of SK Retail's executive and administrative functions, including corporate financing and accounting, are directed from Boston, Massachusetts. (*Id.*)

17.     Nearly all of SK Retail's corporate decisions, including operational, executive, administrative and policymaking, are made from its Boston Massachusetts headquarters, including human resources, finance and accounting, treasury, legal, payroll, and safety. (*Id.*) Accordingly, SK Retail's principal place of business is Boston, Massachusetts under the "nerve center" test. *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).

///

18.     Therefore, because Wayfair's sole member is a citizen of Massachusetts, Wayfair is not a California citizen for purposes of diversity jurisdiction.

<u>The Named Individual Defendants Have Not Been Served and Their Citizenship</u>
<u>Must Be Disregarded for Removal Purposes Under a "Snap" Removal</u>

19.     The Central District has adopted the plain language approach to "Snap" removals, which holds that a removal will not be denied where the non-diverse defendant has not been "properly named and served". See *Choi v. Gen. Motors LLC*, No. CV 21-5925-GW-MRWX, 2021 WL 4133735, at *2 (C.D. Cal. Sept. 9, 2021).

20.     Here, none of the Individual Defendants have been served at the time of the filing of this Notice of Removal. (Felton Decl., ¶ 3.) As such, diversity jurisdiction exists, and Wayfair's removal is proper.

<u>The Named Individual Defendants are "Sham" Defendants and Their Citizenship</u>
<u>Must Be Disregarded for Removal Purposes</u>

21.     A non-diverse defendant's presence in a lawsuit is ignored for purposes of determining diversity when that defendant has been fraudulently joined. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) ("one exception to the requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined.'"); *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (individual defendants in suit for, *inter alia,* intentional infliction of emotional distress were fraudulently joined and did not prevent removal). "A non-diverse defendant is deemed a sham defendant if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned." *Padilla v. AT&T Corp.*, 697 F.Supp.2d 1156, 1158–1159 (C.D. Cal. 2009) (internal citations omitted). The absence of any meaningful allegations against a defendant renders him or her a "sham defendant" whose non-diverse citizenship must be disregarded for purposes of removal jurisdiction. *Brown v. Allstate Ins. Co.,* 17

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

F.Supp.2d 1134, 1136-37 (S.D. Cal. 1998)(dismissing claims against non-diverse individual defendants "no material allegations against these defendants are made.")

22.    The Complaint alleges three causes of action against the Individual Defendants for IIED, unfair business practices, and declaratory relief – all of which fail as a matter of law. (Felton Decl., ¶ 2, Ex. 1, Compl., ¶¶ 56–61, 62-68, 69-73.) As discussed below, the Individual Defendants are "sham" defendants fraudulently joined for the purpose of avoiding diversity jurisdiction.

23.    **First**, as to Plaintiff's IIED cause of action, Plaintiff's claim fails for the following reasons: (1) Plaintiff fails to plead sufficient facts to state a cause of action; (2) Plaintiff's IIED claim fails–as a matter of law–because it is barred by the exclusive remedy of the California's Workers' Compensation Act (the "Act"); and, (3) Plaintiff's IIED fails because agents or representatives of employers are immune from liability for personnel decision-making.

24.    **Second**, Plaintiff's Unfair Business Practices claim against the Individual Defendants fails as a matter of law because the Individual Defendants are not owners or officers of Wayfair.

25.    **Third**, Plaintiff's cause of action for Declaratory Relief against the Individual Defendants also fails because: (1) it improperly seeks specific performance; (2) and, the Individual Defendants are not authorized to provide the declaratory relief sought.

*IIED: Plaintiff Fails to Plead Sufficient Facts to State a Claim Upon Which Relief Can Be Granted, As the Alleged Conduct is Not "Extreme and Outrageous"*

26.    "If the Plaintiff fails to state a cause of action against a resident defendant . . . the joinder of the resident defendant is fraudulent." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). "[W]hether an action should be remanded must be resolved by reference to the complaint at the time the petition for removal was filed." *See Brown v. Allstate Ins. Co.*, 17 F.Supp.2d 1134, 1137 (S.D.

Cal. 1998)(fraudulent joinder found where the complaint as it existed at removal did not allege any wrongdoing by the individual defendants).

27.     To state a claim for IIED, a plaintiff must allege, *inter alia,* "**extreme and outrageous conduct** by defendants with the *intent* of causing emotional distress." *Conley v. Roman Catholic Archbishop of S.F.,* 85 Cal.App.4th 1126, 1133 (2000) (emphasis added). Under California law, it is well established that stray managerial actions **cannot** constitute IIED as a matter of law.  *See Shoemaker v. Myers,* 52 Cal.3d 1, 25 (1990) (holding that "[]discipline or criticism[] are a normal part of the employment relationship" and thus cannot rise to the level of IIED); *Janken v. GM Hughes Elecs.*, 46 Cal.App.4th 55, 80 (1996) (finding that defendant's alleged discrimination claims, including discriminatory personnel practices, could not constitute a basis for an IIED cause of action because "[a] simple pleading of personnel management activity is insufficient to support a claim [IIED], even if improper motivation is alleged" because "[m]anaging personnel is **not** outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society."); *Hughes v. Pair*, 46 Cal.4th 1035, 1051 (2009) ("Liability for intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.").

28.     Here, the Complaint – on its face – fails to allege any facts or wrongdoing by the Individual Defendants, let alone extreme and outrageous conduct.

29.     In an effort to plead an IIED cause of action, the Complaint merely regurgitates legal standards and asserts conclusory statements. (*See e.g.,* Felton Decl., ¶ 1, Ex. 1, Compl., ¶¶ 56–61.)

30.     **First**, the Complaint fails to allege any material allegations against Ms. Flores and Mr. Flores. (Felton Decl., ¶ 1, Ex. 1, Compl., *passim*.) Thus, Plaintiff fails to state a cause of action against these defendants.

///

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

31. **Second**, the only reference to actions made by any Individual Defendants, merely describe Mr. Ni and Mr. Barton calling Plaintiff to inform him of his termination – *i.e.*, a personnel management decision, which does not rise to the requisite "extreme and outrageous conduct" for an IIED claim. Plaintiff alleges that "Plaintiff received a call from HR STEVEN NI and his Senior Office Manager CHRISTOPHER BATON [sic] shortly before his shift, informing him of his immediate termination." (*Id.*, Ex. 1, Compl., ¶ 17.) This was nothing more than a management decision to terminate Plaintiff's employment with Wayfair. And, of course, terminating an employee is **not** conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *See Yurick v. Super. Ct.*, 209 Cal.App.3d 1116, 1128 (1989); *Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348, 1352 (9th Cir. 1984) (finding that plaintiff's factual allegations of the "manner" in which he was terminated did not support an IIED claim); *Magnuson v. Burlington N., Inc.*, 576 F.2d 1367, 1369 (9th Cir. 1978) ("Every employee who believes he has a legitimate grievance will doubtless have some emotional anguish occasioned by his belief that he has been wronged.").

32. Thus, even if Plaintiff's allegations are taken as true, Mr. Ni and Mr. Barton's conduct falls well within the parameters of personnel management activities. Plaintiff fails to plead sufficient facts to meet the requisite "extreme and outrageous" element of his IIED claim. Consequently, Plaintiff has failed to plead a claim upon which relief can be granted as to Mr. Ni and Mr. Barton.

33. **Third**, Plaintiff fails to allege any actions or conduct whatsoever by Mr. Fuentes which was directed to him. Rather, Plaintiff merely alleges that he "*became aware*" that Mr. Fuentes was sexually harassing one of his female co-workers and reported it out of his "*professional and moral obligations*." (Felton Decl., ¶ 2, Ex. 1, Compl., ¶¶ 14-15)(emphasis added.) Subsequently, Plaintiff alleges that as a result of Plaintiff's complaint and Wayfair's investigation, Mr. Fuentes was terminated. (*Id.* at ¶ 16.) Plaintiff then alleges that "in a turn of events", he was also terminated for

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

"breach of policy", though he believes it was for his participation in Mr. Fuentes' investigation. (*Id.* at ¶ 17.)

34.    Plaintiff fails to state a cause of action against Mr. Fuentes because he fails to allege any extreme and outrageous conduct by Mr. Fuentes towards him or any objective reasonable person in his position. *See generally Thompson v. City of Monrovia*, 186 Cal.App.4th 860 (2010) (lack of standing in a derivative harassment claim where discriminatory acts towards African Americans were not directed towards the Caucasian bystander for his association with or advocacy of the targeted group and, the acts – while offensive to the targeted group – was not sufficiently severe or pervasive to a reasonable person belonging to the bystander's racial or ethnic group). Further, Plaintiff fails to allege any facts to demonstrate an *intent* by Mr. Fuentes to cause him emotional distress. Indeed, Plaintiff's sole motivation in reporting Mr. Fuentes was based on his "moral and professional obligations" and not for any alleged derivative harassment to Plaintiff. (Felton Decl., ¶ 2, Ex. 1, Compl., ¶ 15.) Lastly, Plaintiff concedes that Mr. Fuentes was of the same rank as Plaintiff and was ultimately terminated as a result of Plaintiff's complaint and the investigation that ensued – thus it is clear that Mr. Fuentes had no authority and was not involved in any manner in Plaintiff's termination. (Felton Decl., ¶ 2, Ex. 1, Compl., ¶¶ 3, 11.) As such, Plaintiff fails to state a claim against Mr. Fuentes for IIED.

35.    Because Plaintiff cannot state a claim for IIED against Defendants, including the Individual Defendants, they should be dismissed and their citizenship should be disregarded for purposes of removability of this action.

*IIED: Plaintiff's IIED Cause of Action Also Fails, As a Matter of Law, Because it is Barred by the Exclusive Remedy Under the Act*

36.    Claims for emotional distress caused by an employer's conduct in employment actions involving termination, transfers, promotions, demotions, criticism of work practices, etc., are deemed "part of the normal risk of employment" and hence subject to the exclusive remedy provisions of the workers' compensation

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

law. *See Romaneck v. Deutsche Asset Mgmt.*, No. C05-2473 TEH, 2005 WL 2171987 at *5 (N.D. Cal. Sept. 6, 2005) (finding that employer's alleged failure to accommodate, engage in the interactive process, and subsequent termination, even if in violation of public policy, did not rise to the level of outrageous conduct required to state a claim for IIED.); *Livitsanos v. Super. Ct.*, 2 Cal.4th 744, 752, 754 (1992) ("An employee's emotional distress injuries are subsumed under the exclusive remedy provisions of [the Act]."); *Yau v. Santa Margarita Food, Inc.*, 229 Cal.App.4th 144, 161 (2014) ("Emotional injuries caused by workplace discipline, including termination, fall within [the workers' compensation exclusivity] rule."); *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 160 (1987) ("when the misconduct attributed to the employer's actions . . . are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances," an employee may not avoid the workers' compensation exclusive remedy provisions). "Even if such conduct may be characterized as intentional, unfair or outrageous, it is nevertheless covered by the workers' compensation exclusivity provisions." *See Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 902 (internal citations and quotations omitted.)

37. Here, Plaintiff 's IIED cause of action is entirely based on factual allegations that stemmed directly from the normal course of his employment with Wayfair, including his termination. Specifically, the only *facts* gleaned from the Complaint with respect to Individual Defendants is the notification of his termination he received from Mr. Ni and Mr. Barton. (Felton Decl., ¶ 2, Ex. 1, Compl., ¶¶ 17-20, 56-61.)

38. Defendant's staffing and termination decisions are a normal part of the employment relationship. Thus, Plaintiff's IIED cause of action is barred by the exclusivity provisions of the Act. *Miklosy v. Regents of the Univ. of Cal.,* 44 Cal. 4th 876, 902 (2008) (affirming demurrer where the underlying facts of plaintiff's IIED claim "occurred at the worksite, in the normal course of the employer-employee

relationship, and therefore workers' compensation" was plaintiff's "**exclusive remedy for any injury that may have resulted**.") (emphasis added).

39.     As such, Plaintiff's IIED claim further fails as it is barred by the Workers' Compensation Exclusivity Rule.

*IIED: As Managers and Human Resources Representatives the Individual Defendants are Immune from Tort Liability Based on Personnel Decision-Making*

40.     Courts have consistently held that managers, agents, or representatives of an employer are shielded from liability when making personnel decisions. *See e.g., Sheppard v. Freeman*, 67 Cal.App.4th 339, 345–47 (1998) ("[A]n employee or former employee cannot sue individual employees based on their conduct, including acts or words, relating to personnel actions."); *Kacludis v. GTE Sprint Comm. Corp.,* 806 F.Supp.866, 872 (1992) (finding that individual defendant was protected from liability as to plaintiff's IIED claim because "[i]f [the manager's] privilege protects nothing else, **it protects a manager's right to manage personnel (including firing and hiring) without fear of independent liability**, absent concrete and specific allegations that such actions were entirely for the benefit of the individual.") (emphasis added); *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (under California law, where the misconduct is alleged to have occurred in the course of employment, the manager's privilege precludes individual liability, even if the purported conduct was also motivated by bias or ill will).

41.     The Complaint alleges that Ms. Flores and Mr. Flores were Managers for Wayfair without alleging any material allegations against them. (Felton Decl., ¶ 2, Ex. 1, Compl., *passim*.) Thus, Plaintiff fails to state a cause of action against these defendants.

42.     The Complaint alleges that Mr. Ni was the Human Resources Representative for Wayfair and that Plaintiff reported sexual harassment another employee was experiencing to Mr. Ni based on his "moral and professional obligations." (Felton Decl., ¶ 2, Ex. 1, Compl., ¶ 14- 15.) It is further alleged that the

SR
SANDERS ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

alleged perpetrator was terminated as a result of the investigation into Plaintiff's complaint. (*Id*. at ¶ 16.) Finally, Plaintiff alleges that Mr. Ni subsequently called him to inform him of his termination. (*Id*. at ¶ 17.) Based on the factual allegations against Mr. Ni, it is clear that his involvement, if any, is merely personnel management decisions (i.e., disciplining, firing). As such, Plaintiff fails to state a cause of action against Mr. Ni for IIED.

43.     Likewise, Plaintiff's only factual allegation relating to his Manager, Mr. Barton, was his call to inform him of his termination. (*Id*. at ¶ 17.) As such, Plaintiff fails to state a cause of action against Mr. Barton for IIED.

44.     The Complaint does not contain a single allegation that Ms. Flores, Mr. Flores, Mr. Ni, and Mr. Barton acted *outside* the scope of their employment with Wayfair. The acts that Plaintiff attributes to Mr. Ni and Mr. Barton's decision-making related to their job duties (e.g., hiring, firing, disciplining, etc.) *are normal personnel decisions* made to benefit Wayfair. Such actions cannot form the basis for individual liability as against these Individual Defendants.

*Unfair Business Practices: Plaintiff Cannot Maintain a Cause of Action for Unfair Business Practices Against the Individual Defendants*

45.     Only an owner or officer of a corporation may be individually liable under the Unfair Competition Law if he or she actively and directly participates in the unfair business practice. *See Bradstreet v. Wong* 161 Cal.App.4th 1440, 1458 (2008), disapproved on other grounds  by *ZB, N.A. v. Superior Court*, 8 Cal.5th 175 (2019), and abrogated on other grounds by *Martinez v. Combs*, 49 Cal.4th 35 (2010) ("an *owner or officer* of a corporation may be individually liable under the UCL if he or she actively and directly participates in the unfair business practice, [but] it does not necessarily follow that all of the remedies imposed with respect to the corporation are equally applicable to the individual.")

46.     Plaintiff's claims against the Individual Defendants for Unfair Business Practices fail as a matter of law because they are not owners or officers of Wayfair.

(Felton Decl., ¶ 2, Ex. 1, Compl., ¶¶ 7-11.) Further, Plaintiff fails to allege any facts that they actively participated in any unfair business practice. (*Id.*, *passim*.)

47.     Because Plaintiff has improperly alleged a claim of unfair business practices against the Individual Defendants, each of them are "sham" defendants for purposes of removal.

*Declaratory Relief: Plaintiff Cannot Seek Declaratory Relief from Wayfair's*
*Employees*

48.     Plaintiff seeks declaratory relief from Defendants, including the Individual Defendants. Specifically, Plaintiff seeks the following:

"a. That Plaintiff ***is*** an employee of Defendants and there was a unsafe work environment in which Plaintiff was required to work; and

 b. That Plaintiff is entitled to all the rights of an employee under California law."

(Felton Decl., Ex. 1, Compl., ¶ 72)(emphasis added).

49.     First, Plaintiff's request for declaratory relief is impermissible because he is not currently employed by Wayfair and appears to seek a declaration that he *is* an employee (i.e., specific performance). *See Scott v. Pacific Gas & Electric Co.*, 11 Cal.4th 454, 473 (1995)(specific performance not available in employment cases).

50.     Second, the Individual Defendants, whom are employees themselves, are not in a position/authorized to provide the declaratory relief Plaintiff seeks from his prior employer, Wayfair.

51.     Because Plaintiff has improperly alleged a claim of declaratory relief against the Individual Defendants, each of them are "sham" defendants for purposes of removal.

### "Doe" Defendants Must Also Be Disregarded for Diversity Jurisdiction Purposes

52.     The presence of Doe defendants in this case has no bearing on diversity of citizenship for removal.  28 U.S.C. § 1441(a) ("For purposes of removal under this

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

chapter, the citizenship of defendants sued under fictitious names shall be disregarded.").

53.     Pursuant to 28 U.S.C. § 1441(b)(1), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see also Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002). Thus, the existence of Doe defendants one through a hundred, does not deprive this Court of jurisdiction.

54.     For the reasons stated above, the Court has jurisdiction based on diversity of citizenship.

<strong>Amount in Controversy Exceeds the Statutory Minimum</strong>

55.     Under the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Congress clarified that the preponderance of the evidence standard applies to removals under 28 U.S.C. § 1332(a). *See* H.R. Rep. 112-10 at 16 ("defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met."). 28 U.S.C. § 1446(c)(2)(A) provides, in relevant part, "the notice of removal may assert the amount in controversy if the initial pleading seeks ... a money judgment, but the State practice ... permits recovery of damages in excess of the amount demanded." *See Damele v. Mack Trucks, Inc.*, 219 Cal.App.3d 29, 41–42 (1990) (noting that under California law, a plaintiff is not limited to the statement of damages set forth in his Complaint). Thus, even if a plaintiff alleges that the amount in controversy for Plaintiff individually does not exceed the sum or value of $75,000, "removal of the action is proper on the basis of an amount in controversy … if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)," or $75,000. 28 U.S.C. § 1446(c)(2)(B); *see, e.g., RT Financial Inc. v. Zamora*, No. 1:12-cv-01581-AW-SKO, 2012 WL 4468763, *2 (E.D. Cal. Sept. 27, 2012) (holding that the



SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

preponderance of the evidence standard applied to a complaint which expressly stated that the amount in controversy did not exceed $10,000).

The preponderance standard is not a "daunting" standard. *Muniz v. Pilot Travel Centers LLC*, No. CIV. S-07-0325FCDEFB, 2007 WL 1302504, at *2 (E.D. Cal. May 1, 2007); *Valdez v Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy."). Defendants are not obligated to "research, state, and prove the plaintiff's claims for damages." *Behrazfar v. Unisys Corp.*, 687 F.Supp.2d 999, 1004 (C.D. Cal. 2009) (quoting *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1204-05 (E.D. Cal. 2008). A removing defendant must simply produce underlying facts or evidence demonstrating more likely than not the amount in controversy exceeds $75,000. *See Sanchez v. Monumental Life Ins.*, 102 F.3d 398, 404 (9th Cir. 1996) ("[D]efendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the threshold] amount."); *see Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (district court properly considered damages awards in other similar cases) (emphasis added); *Rippee v. Boston Market Corp.*, 408 F.Supp.2d 982, 986 (S.D. Cal. 2005) (noting that the inquiry is what amount is "put in controversy" by the plaintiff's complaint, not what a defendant will actually owe).

56.     In determining whether the amount in controversy exceeds $75,000, this Court must presume Plaintiff will prevail on each and every one of his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002), *citing Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes "plaintiff prevails on liability") and *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim, but rather by reasonable reading of the value of the rights being litigated").

57.     Additionally, the Court may consider the value of nonmonetary relief sought and aggregate claims for monetary and nonmonetary relief brought by a single

plaintiff against a single defendant. *See* 28 U.S.C. § 1446(c)(2)(A)(i); *Bank of Calif. Nat'l Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972) (noting "aggregation is permitted when 'a single plaintiff seeks to aggregate two or more of his own claims against a single defendant.'").

58.     Where removal is based on diversity of citizenship, and the initial pleading seeks a money judgment but fails to demand a specific sum, "the notice of removal may assert the amount in controversy."  28 U.S.C. § 1446(c)(2). In that situation, the removing defendant "need include *only a plausible* allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S.Ct. 547, 554 (2014) (emphasis added).

59.     Here, although the Complaint does not explicitly specify the amount he seeks to recover from Defendants in this action, Plaintiff prays for "1. For back pay, front pay, and other special damages according to proof; 2. For damages, including but not limited to, all economic and non-economic damages, and damages; 3. For punitive damages, where allowed by law; 4. For a declaration of rights; 5. For pre-judgment and post-judgment interest on all damages awarded; 6. For all statutory penalties pursuant to Labor Code 6310, 6311, 6402, 6404, 6405, and 1102.5; 7. For reasonable attorney's fees as allowed by law or contract; 8. For costs of suit incurred; and 9. For such other and further relief as the Court may deem just and proper.  (Felton Decl., ¶ 2, Ex. 1, Compl., Prayer for Relief.) Plaintiff's Complaint, on its face, satisfies the $75,000.00 jurisdictional threshold.

60.     Additionally, and as further discussed below, claims like Plaintiff's lawsuit have led to recoveries exceeding the jurisdictional minimum. All calculations supporting the amount in controversy are based on Plaintiff's potential recovery pursuant to the claims alleged in the Complaint, assuming, without any admission, the truth of any of the allegations, and assuming liability (which is disputed) could be established.  While Defendants deny any liability as to Plaintiff's claims, the Court has diversity jurisdiction under 28 U.S.C. § 1332(a) over Plaintiff's claims because

the allegations demonstrate that Plaintiff seeks damages far in excess of $75,000 for at least **three** additional reasons.

*Plaintiff's Counsel's Representations Confirm Plaintiff Seeks More Than $75,000 in Recovery*

61.     Although Plaintiff's Complaint does not quantify his alleged damages, prior to filing this Notice Defendants' counsel had a telephonic conference call with Plaintiff's counsel. (Felton Decl., ¶ 6.) During the call, Plaintiff's counsel represented and confirmed that Plaintiff is seeking more than $75,000 in damages through this lawsuit. (*Id.*)

*Plaintiff's Claims Establish That the Damages Sought Exceed $75,000*

62.     Plaintiff alleges that "he was wrongfully terminated by Defendants after Plaintiff made complaints about the sexual harassment his associate was experiencing and in retaliation for complaining to Defendants about what Plaintiff reasonably believed in good faith and suspected was in fact illegal conduct that harmed Plaintiff as well as the public." (Felton Decl., ¶ 2, Ex. 1, Compl., ¶ 25.) Plaintiff further alleges that "As a direct and foreseeable result of the aforesaid acts of said Defendants, Plaintiff has lost and will continue to lose income and benefits in an amount to be proven at the time of trial." (Felton Decl., ¶ 2, Ex. 1, Compl., ¶ 27.) Plaintiff also claims that "As a result of the aforesaid acts of Defendants, Plaintiff claims damages for emotional distress, general anxiety, grief, shame, humiliation, embarrassment, anger, disappointment and worry, all to his damage, at a minimum, in excess of the maximum jurisdiction of the municipal court." (Felton Decl., ¶ 2, Ex. 1, Compl., ¶ 28.)

63.     As a result of the alleged violations, Plaintiff claims to have "suffered general damages, losses in earnings, deferred compensation, earning capacity, and out-of-pocket expenses and consequential damages." (Felton Decl., ¶ 2, Ex. 1, Compl., ¶¶ 29, 34, 40, 45, 51, 55, and 57.)

///

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

64.     A review of verdicts in California demonstrates that verdicts in cases involving similar claims for wrongful termination, retaliation, and IIED commonly exceed $75,000.  *Weber v. County of Santa Clara*, 2018 WL 10758485 (Santa Clara County Superior Court September 26, 2018)($1,552,800 granted in whistleblower retaliation under Cal. Lab. Code Sec. 1102.5, retaliation for complaining about the quality of patient care under Cal. Health & Safety Code Sec. 1278.5, and retaliation for making complaints about workplace health and safety issues under Cal. Lab. Code Sec. 6310); *Ortega v. Carson Wild Wings LLC*, 2020 WL 1812491 (Los Angeles Superior Court, February 11, 2020) ($300,000 awarded in whistleblower retaliation under Cal. Lab. Code Sec. 1102.5, retaliation for engaging in protected activity under Cal. Lab. Code Sec. 98.6, wrongful termination in violation of public policy and negligent and intentional infliction of emotional distress); *Rivera v. Costco Wholesale Corp.*, 2014 WL 8108415 (Riverside County Superior Couty, November 4, 2014 (jury awarded $1,686,500 (reduced by Judge to $1,186,500) for wrongful termination and retaliation for reporting safety violations and disability discrimination).

*The Complaint Seeks Punitive Damages Against Defendants*

65.     In determining the amount in controversy, the Court must also consider each of Plaintiff's requests for punitive damages.  *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) ("It is well established that punitive damages are part of the amount in controversy in a civil action"); *Davenport v. Mutual Benefit Health and Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages must be taken into account where recoverable under state law).

66.     Plaintiff's request for punitive damages weighs in favor of establishing the amount in controversy.  (Felton Decl., ¶ 2, Ex. 1, Compl., ¶¶ 35, 46, and Prayer for Relief.) Punitive damages may be substantial and, in some cases, even exceed the amount in controversy, particularly as to institutional clients, including limited liability companies like Wayfair. *See Duin v. Allstate Insurance Co.*, No. 97CV1113JM (RBB), 1997 WL 813002 *1, *2, (S.D. Cal. Dec. 15, 1997) (since

removing defendant was a corporation, "it [was] more likely that any award of punitive damages would exceed $75,000.00").

67.    Therefore, the request for punitive damages further weighs in favor of establishing the amount in controversy.

*Reasonable Attorney's Fees*

68.    This action includes a claim for wrongful termination and retaliation in violation of public policy brought under Labor Code Sections 1102.5(b), Section 6310, and Section 6311, *et seq.* Plaintiff's Complaint includes a claim for attorney's fees. (Felton Decl., ¶ 2, Ex. 1, Compl., ¶¶ Prayer for Relief.)  Where the underlying statutes entitle a prevailing plaintiff to an award of reasonable attorneys' fees, such fees must be included in the amount in controversy. *See Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy."); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory).  The reasonable amount of attorneys' fees in a case may be based upon fee awards in similar cases, Plaintiff's counsel's hourly rate, and the number of hours counsel expects to spend on this case.  *See Brady*, 243 F. Supp. 2d at 1011 (N.D. Cal. 2002). Even a modest amount of attorneys' fees further increases the amount in controversy beyond the jurisdictional minimum. The estimate of attorneys' fees includes fees over the life of the case, not just the fees incurred at the time of removal. *Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1035 (N.D. Cal. 2002) (noting "attorneys' fees in individual discrimination cases often exceed the damages" and "[s]uch fees necessarily accrue until action is resolved."). Defendant anticipates substantial discovery and depositions being taken in this case, particularly in light of the multiple Individual Defendants named, and that Defendant will file a Motion for

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

Summary Adjudication and/or Summary Judgment. In this regard, it is more likely than not that the fees will exceed $75,000 through extensive discovery and a summary judgment hearing, and the fees would certainly exceed $75,000 if the case proceeds to trial. *See Bayer, et al. v. Morse, et al.*, San Francisco Superior Court Case No. CGC-13-534482 (August 26, 2015) (costs of bringing suit including attorney's fees resulted in total judgment of $742,615.28 where jury verdict was only $370,000) (Felton Decl., ¶ 6, Ex. 4).

69.     Considered together, the alleged general and special damages sought by Plaintiff for all his claims, along with the attorney fees and alleged punitive damages, establishes by a preponderance of the evidence that the amount in controversy for his claim exceeds $75,000. Plaintiff confirms the same in the Complaint. Thus, Plaintiff's alleged damages are within the jurisdictional authority of this Court.

70.     Since diversity of citizenship exists between the Plaintiff and Wayfair and the amount in controversy between the parties is in excess of $75,000, this Court has original jurisdiction of the action pursuant to 28 U.S.C. § 1332(a)(1). Removal to this Court is therefore proper.

## VENUE AND DISTRICT ASSIGNMENT

71.     As discussed above, Plaintiff is a citizen of California, specifically residing in Riverside County, California.

72.     Plaintiff originally brought this action in the Superior Court of the State of California for the County of Riverside.  The County of Riverside lies within the jurisdiction of the United States District Court, Central District of California, Eastern Division.

73.     This Court is the United States District Court for the district within which the State Court Action is pending.  Therefore, pursuant to 28 U.S.C. §§ 1391(c)(1), 1441(a) and 1446(a), venue lies in the Central District, Eastern Division, of this Court.

## NOTICE TO STATE COURT AND PLAINTIFF

74.     As required by 28 U.S.C. § 1446(d), Defendant will promptly provide

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

1   written notice of this Notice of Removal to Navid Kanani, Esq. and Nataleen S.

2   Markarian, Esq. of JS ABRAMS LAW, PC., counsel for Plaintiff, and will also

3   promptly file a copy of this Notice of Removal with the Clerk of the Superior Court

4   of the State of California, Riverside County.

5                           **<u>CONCLUSION</u>**

6        75.    Consequently, having complied with all pertinent requirements,

7   Defendant removes the Civil Action from the Superior Court of Riverside County,

8   California, to this Court and respectfully invokes the Court's jurisdiction thereby.

9

10  Dated:  August 30, 2023            **SANDERS ROBERTS LLP**

11

12                          By: _____
                                Melvin L. Felton, Esq.
13                              Cindy Kaoud, Esq.
                                Attorneys for DEFENDANT
14                              **WAYFAIR, LLC**

15

16

17

18

19

20

21

22

23

24

25

26

27

28